Exxon and Exxon et al. May it please the Court, Michael Rubin on behalf of the City of Oakland and the City and County of San Francisco. These cases involve a single claim brought by the city attorneys of San Francisco and Oakland on behalf of the people of the State of California based on 150-year-old statutes that allow the sovereign, but only the sovereign, an exercise of the sovereign's core police power authority to bring a representative action for public nuisance, seeking equitable abatement against a defendant that knowingly created or assisted in creating a public nuisance, that is, a nuisance that affects an entire community. The only relief in these cases that is sought is equitable abatement and only for localized harm because under Article 11, Section 7 of the California Constitution and Section 731 of the Code of Civil Procedure, that is the extent of the local government's authority in pursuing a representative public nuisance case. Only abatement, no damages, no restitution, and only to abate the localized harm. The core allegations, and this gets back to some of the questions that Judge Christin asked before, and I'll refer the Court specifically to paragraphs 103 to 123 and 145 to 47, are similar to the allegations in the lead paint cases where the California appellate courts addressed a similar situation in litigation brought against private parties that were responsible for lead paint in residential housing, a public nuisance in California. Those allegations focus on wrongful promotion. They allege that these private companies, this is not a suit against a government entity, the private companies engaged in a large-scale, sophisticated advertising and communications campaign to promote the use of their products at massive levels that defendants claimed were safe and environmentally responsible. Although defendants have known, according to the allegations of the complaint, since the early 70s that global warming threatened severe and even catastrophic harms to coastal cities like San Francisco and Oakland, they embarked on this campaign by undermining or discrediting the scientific evidence, withholding information they had about global warming, basically trying to persuade the community to use their fossil fuels rather than sources of renewable energy, thereby causing the problems that need abatement. And we point out in paragraph 3 and paragraph 92 to 94 the temporal correlation, because at the same time that defendants were engaged in this wrongful promotional campaign was the greatest period of fossil fuel use in the history of the world. So the core allegation in the complaint is that through this campaign of wrongful promotion, they assisted in the creation of a nuisance using the language of the public nuisance law that resulted in the expanded use of fossil fuels. Like the lead paint case, these cases are not based on any defect in the product. The defendants aren't being sued for their emissions. In fact, Judge Alsop specifically noted in ER 28 that the complaints didn't allege that defendants were liable for any direct emissions. They simply are focusing on what has been called a campaign of deception as outlined in paragraphs 103 to 23. Now, the district court, after recognizing that the complaints don't seek to impose liability for direct emissions, issued two rulings that were inconsistent with that recognition and inconsistent with each other. The first ruling, the denial of the motion to remand, the judge concluded that these cases were necessarily governed by the federal common law of greenhouse gas emissions. That's wrong for reasons that I can explain. The second ruling, though, the Rule 12b-6 dismissal, said there is no federal common law of greenhouse gas emissions because it's been displaced by the Clean Air Act. Hi. Could I ask you about the court's denial of the motion to remand? Yes. And so let's assume for the moment we think that was an error. The district court then went on, as you point out, to decide the issue on 12b-6. And so do we have some case law about at least if a case has gone to trial, if there's been a summary judgment, as long as jurisdiction is proper at the time of that decision, it shouldn't be actually remanded to the state court because of issues of finality, economy, and I forgot what the third adjective was. Sure. Sure. I believe you're talking about whether it's incompatible with a fair and unprotracted administration of justice. And so should we say, although we've never ruled on 12b-6, on whether that counsels against a remand if there was an erroneous removal or an erroneous denial of the motion to remand, how should we address that here? Let me address the issue in two ways. First, as a matter of jurisdiction, if there is no subject matter jurisdiction, neither Judge Alsup nor this court can reach the 12b-6 issues or the 12b-2 issues. But there's no issue about subject matter jurisdiction, right, because your client amended its complaint. No. And that's the second point, and that's the direct point that I need to emphasize. That's the waiver issue. And the question there under Caterpillar in the Supreme Court, and this Court's decision in Singh in May, is whether plaintiffs, the cities of San Francisco and Oakland, by amending the complaint after the denial of remand, thereby created federal subject matter jurisdiction that didn't otherwise exist. And there are three reasons why, under the controlling Supreme Court and Ninth Circuit case law, there was not waiver. The first reason is that the cities expressly preserved their appellate rights. That's in paragraph 12 and 138 and 139 of the First Amendment complaint, where they made clear that they were amending only to conform to the Court's ruling, and they reserved all rights with respect to whether jurisdiction is proper in federal court. That's like the Halloran v. University of Washington case, where this Court pointed out that there was no waiver because it was clear that the plaintiff had no intention of waiving her claim that jurisdiction wasn't proper. Second, and this is probably the most important distinction, the amended complaint essentially responded, although we don't know the actual analysis that Judge Alsup applied, the complaint dealt with what was effectively complete preemption. By saying these cases were necessarily governed by federal common law, what Judge Alsup was really saying is that they were completely preempted by federal common law. And as this Court pointed out in Hansen v. Group Health Cooperative, and I think as Judge Ludig explained most clearly in the Fourth Circuit and the King v. Marriott case, when you conclude that a case may be removed to federal court because it is completely preempted by federal law, you are essentially taking those allegations and saying, no, you can't pursue them as a state law claim. You're recharacterizing, they're converted to a federal law claim. So effectively what has happened is that those state law claims, the facts remain, the allegations remain, but they're transformed into a federal law claim. At that point, the choice that the city of Oakland and San Francisco had was either to accept a complete dismissal of the case, as Hansen points out, or to preserve the appellate rights as they did and go forward with the case. So the second, the first reason is they preserved the rights. The second is that the amendment simply recharacterized. Are you saying the amendment wasn't voluntary? It wasn't voluntary. It was the only way the case could proceed. It's not like the Singh case where the plaintiff, there was a diversity problem, added a Truth in Lending Act claim to a prior Washington consumer law claim, a completely different claim based on different facts and allegations. Here, they had no choice. It was an involuntary amendment. Your time is ticking. What's the third reason? And the third reason goes to the Caterpillar was talking about the exorbitant cost to our dual system of federalism. There was a six-week jury trial there. In this case, the case was resolved at the Rule 12b stage. The Caterpillar said to wipe out an adjudication post-judgment would impose exorbitant costs because they had gone through the whole process of trial and so forth and discovery. In this case, the case was resolved at the outset, and as Judge Ludig pointed out, what we're being deprived of here is the right to have our state law claims determined as a matter of state law. And, therefore, it would be prejudicial to the cities and counties to permit the involuntary amendment to preclude them from getting back to state court where these cases belong. Is that your answer to the issues of finality, efficiency, and economy? Yes. Thank you. Yes. Now, as to removal jurisdiction, the court did refer to the cases being necessarily governed by federal law and so forth. What you have to do is you have to look at the actual allegations of the complaint, which I referred to earlier, and then you have to figure out what exactly is the federal common law that the court was talking about. Counsel, because your time is ticking, if we agree with you, I'm very interested in what you think we should do. I think there's only one thing that you can do. If you agree with us, then you remand the case to state law to apply the principles of representative public nuisance to be pursued by the city, all of the defenses that defendants raised. If district court, I just have to ask you, we would remand to district courts, of course, with instructions, but the district court ruled on only one ground, that there was a rising under-jurisdiction, but the opposing counsel raised a number of grounds for removal. What do we do with those? That's true. Counsel in the San Mateo cases has addressed two of those, the federal officer jurisdiction and the Outer Continental Shelf Lands Act. We agree with those. We briefed those thoroughly. We also briefed each- Counsel, if we decide that Patel controls them, that we don't review those- Yes. If you enter into that thought experiment with me, then what about the six, I think there are six, but however many that are left in the- You have two choices. We're asking what is your view, what we should do about those. I believe you should consider and reject those because- On their merits. Because none of them have merit for the reasons stated in our brief and in the San Mateo's brief, but the alternative would be to remand to allow the district court to consider the other grounds that he didn't consider the first time. But they're issues of law, and it's an over-review, so there's no reason this panel can't decide on them. We typically do reach questions in the first sentence, and these aren't trick questions. That's why I'm trying to figure out, and I think Judge Ikuda as well, what you would have us do. So those are the two choices, clearly. And then what about the 12B6 dismissal for personal jurisdiction, please? What would you have us do with those claims? Again, if you were to decide the six issues and conclude that there's no subject matter jurisdiction, then the district court has to remand without reaching the 12B2 issues because there's no jurisdiction to consider the 12B2 issues. If, however, you remand, I'm sorry, I didn't mean to- Go right ahead, no. If you remand, then the first thing the district court has to do is determine whether it has subject matter jurisdiction, considering the other four or five issues. If the court concludes that it does have jurisdiction, then that court can probably ask for a rebriefing on the personal jurisdiction issue. So have us hold our ruling in abeyance as to the personal jurisdiction challenge? You could. And the remand? You could. You could do a limited remand as well. Sure. It's within the power of the court. The important thing, though, is that unless and until the district court has subject matter jurisdiction, it can't rule on anything else. The Supreme Court has indicated that courts can rule on any threshold ground as long as they don't reach the merits. So why would the district court not be able to rule on personal jurisdiction? Is there some exception? I'm not sure which case you're referring to. I can. Then, Your Honor, I'm not familiar with the case. I didn't understand that without jurisdiction the court could rule on any other issue. Threshold issue. And, of course, there's one defendant as to which there's no dispute about personal jurisdiction. But there are certainly interests of comedy. It is atypical. It's just not unheard of. It's atypical. It's atypical, and one would question whether it's an appropriate exercise of jurisdiction since there is one defendant that doesn't challenge personal jurisdiction, and therefore the court would have to reach the other threshold issues first anyway with respect to that one. But if the Supreme Court allows it, then that's something that the court could do. I can address the personal jurisdiction issues if the court would like, or I could reserve the rest of my time as I would prefer. Is there the factual record for the other grounds for removal? Is the full factual record before us? For example, the leases. Yes, there are really. Well, no, there are only five defendants in this case. The only lease at issue here is the Elk Hills Reserve lease. None of the other leases that were at issue in the San Mateo case are at issue here because those defendants aren't in this case. So this is all about Elk Hills Reserve. We certainly agree about Light v. Crane where the Navy required the omission of the asbestos warnings. I would like to reserve the remainder of my time if I may. All right. Thank you. Thank you. We'll hear from the other side. Thank you, Your Honors. Kenneth Chambogam of Paul Weiss for the non-resident at Belize. I'm going to be addressing the issue of personal jurisdiction in the first five minutes. I'll then yield to my brother, Mr. Boutros, who's going to address the remaining issues, and then you'll hear from Mr. Brightbill on behalf of the government. I have a very limited amount of time, so in my time I hope to accomplish two things. First, really address the heart of plaintiff's argument on personal jurisdiction. And second, to address Judge Christen's question about how personal jurisdiction interacts with the other issues in this case and how the court should dispose of that issue. We think that given all of the issues in this case that this court can and should affirm the district court's dismissal on the issue of personal jurisdiction. And that is for the simple reason that this court has established the but-for test for specific jurisdiction, namely the test that requires a plaintiff. Can I, forgive me, but to be most helpful to me, you're going to the merits of the issue. I'm concerned about comedy. I'm concerned about typically if a case is, before subject matter jurisdiction is established and if we decide Blue Mobile was improper, which I don't think we've really decided yet, by the way, because there are these other grounds, but if you just, again, go with this thought experiment, typically the case would be remanded to the state court. And because of the unusual order in which things proceeded in this case, there, of course, the court went further and dismissed some of the defendants. And I'm very concerned about comedy. So, as Judge Ikuda indicated, the Supreme Court has made clear that a court has the discretion to consider jurisdictional issues in any order. That's the Rohrgass case and the principle that was reaffirmed in the Sinachem case. I think that if this court were to decide outright to remand, it might be a harder question about whether the court can and perhaps more appropriately should address personal jurisdiction first. But if this court were to pursue your proposed path, Judge Christin, and merely remand on the thought experiment path of remanding on the remaining issues, I don't think that there would be any obstacle to this court affirming the dismissal of the nonresident defendants. It seems to me that's when there's really an obstacle. Because if there's a concern about cart before the horse, shouldn't we first figure out whether there really is subject matter jurisdiction? No, because the whole point, I think, of the Supreme Court's principle in Rohrgass is that a court can resolve personal jurisdiction first. And it's certainly the atypical order in which we do things. That is not the typical order. I'm not so sure about that, I think. It's the authority that permits it. But what about my concern about comedy, which you don't seem to be addressing? Your concern about comedy to the state court? Yes. I don't think that there is any concern about comedy if this court resolves the issue of personal jurisdiction itself while the issue of subject matter jurisdiction is left open. I think the issue of personal jurisdiction, I would respectfully submit, is a simple and straightforward one. Everyone agrees, and plaintiffs conceded below, that the applicable test in this circuit is the but-for test, whether the defendant's California-related contacts were the but-for cause of plaintiff's injuries. And I think if you take a look at the briefing in this court, plaintiffs cannot prevail under that test unless they convince this court to do two things. First, to sweep in all of defendant's worldwide activities, not just the California-specific activities of their subsidiaries that they allege in their complaint, but really all of defendant's conduct worldwide during the relevant period. Those activities have to be classed as California-related contacts, notwithstanding the quite clear directive from the Supreme Court that there has to be intentional direction at the forum for out-of-state activities to qualify as forum-related contacts. And second, as a matter of law, plaintiffs have to convince this court to relax the but-for standard in this context to turn that standard into a contributing cause standard or some other type of standard under which a defendant's conduct does not have to be the necessary cause of plaintiff's injuries. Speaking of that standard, the Supreme Court just granted cert in this Ford Motor Company v. Vandiver case, which is looking at the Minnesota's standard for actions in the state related to the tort cause of action was sufficient. So do we have to wait, notwithstanding, for the Supreme Court to rule? This court always has the Article III power to wait, Judge Okuda, but we would respectfully submit, as we indicated in our supplemental letter, that the court need not wait because it is unlikely that those cases are going to be decided in a way that helps plaintiffs here. For plaintiffs to prevail, the Supreme Court would have to relax the standard beyond a but-for standard and abandon a causation requirement entirely, when in fact I think the real question before the Supreme Court is whether it will adopt, as other circuits have done, an even more stringent standard. And so we really don't think that the court needs to wait, that this court can affirm under its existing but-for test. And the last thing I would say, because I've gone over my allotted five minutes, is that I think if you were to accept plaintiff's position, if you were both to sweep in all of our worldwide activities and to relax the but-for standard, you would not only be establishing a principle of effectively universal specific jurisdiction for these claims, which would have enormous consequences for these defendants, it would also have enormous consequences for anyone to whom climate change could be attributed, airplane manufacturers, airlines, car manufacturers, even the users of vehicles. And that would be a remarkably broad proposition, particularly where general personal jurisdiction remains available as a backstop and as a forum in which these claims can be litigated. So we respectfully submit that the district court's decision on personal jurisdiction should be affirmed. Thank you. Good morning again, Your Honors. Theodore Boutrous for the defendants. Let me start with the jurisdictional issue again, because there's no question this court has jurisdiction to review all the grounds for removal. There was no coercion here. The sequence of events is that the plaintiffs filed, labeled their claims as state law claims. We then filed a motion to dismiss once the remand order was issued. At that point, the plaintiffs amended their complaint not just to add new claims. They added two new plaintiffs, the cities themselves, who assert only federal law claims, federal common law claims. And at the time of the judgment under Caterpillar and Singh in the retail trust case from this court, that means that there was federal jurisdiction because there was federal jurisdiction at the time of the judgment unquestionably. But even if the jurisdictional issue was cured by their amendment, whether voluntary or involuntary, we've still said, and other courts have said, that it can be remanded at the time a filing rule applies absent these exceptions. And the exceptions have only been applied when there's a complete trial has been completed or a summary judgment. And the Fifth Circuit, at least in Kamsoft, has specifically said 12B6 is not enough. So why would we split from the Fifth Circuit? Well, here, I mean, again, this is an efficiency question. First, I think jurisdiction is jurisdiction. So I think once there's federal jurisdiction and there's a judgment under Caterpillar, that's the end of the story. The difference between summary judgment and motion to dismiss, I don't think there's any principled way to make that distinction. You're saying the Fifth Circuit was unprincipled? Occasionally. They didn't think it through all the way. But here, Your Honor, I mean, it's federal jurisdiction. And as Justice Ginsburg said in Caterpillar, it's the all's well that ends well. I mean, here they pled federal claims. They decided to take their shot. This wasn't coercive. Judge Alsop gave them permission to appeal immediately, an interlocutory appeal. Instead of doing that, we had a tutorial of scientists and lawyers presenting on climate science, vastly more activity than you would have in a summary judgment case. We argued these issues. We had briefing. And Judge Alsop correctly found that there can be no federal common law remedy under these circumstances based on AEP, based on deference to the legislative and executive branches. That ruling should stand. This court should affirm it. And if the court, and as I mentioned earlier, the court could look at the other grounds. And Judge Lee, the leases, the OXA leases and other leases are on the record here. It's all cited at pages 39 through 41 of our brief. So the court could look at all those issues here because there's no conceivable way that the Supreme Court in AEP, when it said these are complex issues of national and international policy, the federal courts should not create a new claim, meant for this to be thrown to the 50 states based on, as the Ouellette Court said, the vague nuisance standards to start regulating this international and global activity. That's why we believe this arises under federal law. But isn't that more of a separation of powers issue rather than a federalism issue? I mean, I think probably Ninth Circuit judges are ill-equipped and unqualified as state court judges to opine on these issues. So, you know, you can make that argument to state court that there's preemption, et cetera, you know, political question document, whatever it may be. It's a federalism issue too, though, Your Honor, because Texas industry, Milwaukee one, talking about why there is a federal common law body of law, that doesn't mean there's a remedy. That federal law is the body of law we look to. This is step one. What's the source of law? Because of the interstate and international nature of the claim, state law can't apply. We'd have a war among the states. Some states think oil production is good. Alaska has oil production. Texas, California. Different states would have different policies and apply their nuisance standards in different ways. That's why it's a federal law issue, no matter how it's labeled. I'm sorry, Your Honor. So opposing counsels, as you're looking for complete preemption, I think the language you're using sounds more like grable. And so which are you saying? It doesn't seem to fall into the complete preemption box. So explain to me how it falls into the grable box. Your Honor, we are making a grable argument that here, but that's not the argument I started with, so if I can come back to that. The argument in grable is that here, the state claim is asking the courts, and they say over and over that the cost-benefit analysis is what would be crucial to their nuisance claims. And as Judge Alsop found, there was a cost-benefit analysis, some reasonableness analysis. The federal government, through the EPA, through many other regulatory determinations, makes the determination for national security, for the economy, for our energy needs. And AEP talked about this. What's the right balance in terms of oil production and emissions versus the environment and other issues? What worries me is that you're using reasoning. For a change? You're not giving me the case or the statute that would control my decision. Well, I think, Your Honor, on grable, it is a slight extension of grable in the sense that here, this claim is so extraordinary and so unique, it's asking, would be asking the state courts to decide what, for the national interest, is the right balance between the use of fossil fuels and other needs. You're saying there's a national interest exception to the well-pleaded complaint rule. Do I have that right? Well, that wouldn't be quite how I'd put it, Your Honor. But what I would say is that going back to an argument that's not grable and that's not complete preemption, it's our arising under. It's not, it's that we look at the well-pleaded complaint and the allegations of the complaint, and they plead interstate and international activity, global activity. And in the words of the Supreme Court, state law cannot appropriately be applied to that conduct. And this court, in the new SD case, found that even though a complaint was labeled a state law claim because it touched the contract, it touched on national security, it was really a federal claim. It was governed by federal law. And Milwaukee 1 says if federal common law is the body we look to, Standard Oil says this, that Swiss-American case I mentioned from the First Circuit, it's not grable, it's not complete preemption, it's just a constitutional choice of law question. That's what Judge Alsup ruled. Judge Keenan in the Southern District of New York came to the same conclusion, even where the claims were pleaded as state law claims in a diversity case in New York. That's on appeal. So this is just a straight, our first lead argument, in addition to the statutory grounds, which are presented here and I think are powerful, is that the first question under Standard Oil, which AEP noted, first found that the claim was governed by federal law, and then went on to say there's no remedy for deference to the other branches. That's the analysis we think should apply here. And it really, state law cannot apply to these claims. They're not claiming it's in-state emissions. They're not claiming that the law of one other state. It's everything everywhere around the globe. So the only possible source of law is federal law. So that's why we think that as a choice of law matter, the question is federal law, it arises under federal law, and that's the appropriate analysis. Did I hear you agree that you don't really satisfy all the elements of a Grable claim? No, I think we do satisfy a Grable because there are federal issues. Your briefing addressed all of those. And you did say a minute ago that it would be an extension of Grable. I thought it was sort of a retraction of Grable. I think you didn't reach all the points. So do you want to run that by one time, please? Yeah, I did not mean to retract under Grable. There are federal issues that are necessarily presented by the claim. That's the part I think you did address. And that is what's the proper balance, which is for the EPA to make the determination of the balance of factors in terms of emissions. That's the core federal issue we believe needs to be decided. Even though the Clean Air Act has a savings-to-suitors clause, even though that statutory scheme contemplates that the states will be involved. Yes, Your Honor, and I'll turn it over to my colleague from the United States to address those issues. But those clauses only, as the Supreme Court and Wallet under the Clean Water Act pointed out, that saves claims based on in-state source law emissions. So either in-state activities or the application of a sister state's law to sources emanating from there, but not to interstate international claims. Courts have held over and over the Clean Air Act preempts those claims. And in terms of the balance here, that's the federal issue. It's necessary to be decided here. It won't disrupt state and federal relations at all because it's a matter for the federal government. Thank you very much. May it please the Court. My name is Jonathan Brightbill from the Justice Department on behalf of the United States. The United States is here because of the significant federal interest in having the federal government and specifically the political branches of the federal government, its Congress, its President, and the executive agencies set and continue to set national policy in this country relating to the complex questions related to greenhouse gas emissions and climate change. And to set those policies in a manner that balances, as Judge Alsop's opinion recognized below, the multitude of competing environmental, economic, social, energy, and national security interests at stake consistent with our Constitution and our Republican and representative form of government that will balance those policies across all the citizens of the nation and in a manner that is appropriate for resolution of these questions to which the United States believes that the case and controversy such as this is not. This is not a new position of this presidential administration. The prior administration, too, asserted in its 2012 brief to the Supreme Court in the American Electric Power case that common law nuisance actions seeking remedies relating to climate change are displaced or preempted by the Clean Air Act and further present issues which are simply not justiciable in courts. Approximately two weeks ago, another panel of this court rejected another similar lawsuit as the case here. Giuliana v. United States was targeted directly at the executive branch of the federal government, naming the secretaries of 11 Cabinet agencies and even the President of the United States, first President Barack Obama and later substituted President Donald Trump. In dismissing that case, Judge Hurwitz wrote, because it is axiomatic that the Constitution contemplates that democracy is the appropriate process for change, some questions, even those existential in nature, are the province of the political branches. Slip of opinion at 28. The United States heartily agrees. Now, as to this case, the United States agrees that the district court had federal question jurisdiction over the claims asserted by the cities. And here, the city's waiver of remand makes that clear cut. As to the Singh case, the element that was not reached in address that relates to the judicial efficiency and economy is, if this type of non-waiver, because here they were not coerced, they were given the opportunity to appeal or not appeal. If this type of conduct is allowed, in this case and writ large, essentially what you would be providing is any plaintiff, a heads-I-win, tails-I-lose option, to proceed with litigation in federal court, see how it works out for them, either at motion to dismiss or otherwise, and then if it fails, still preserve the ability to try to go back to state court, claiming that the removal never should have happened in the first place. That would simply be unfair to the litigants who have been involved in this case and proceeded in this case, and would encourage gamesmanship as to whether or not to continue and take an appeal or proceed with a case. The United States further agrees that both federal and state common law claims stated in the amended complaint are displaced or preempted. Now the city's response here boils down to this assertion repeatedly made that they're not seeking to regulate greenhouse gas emissions of the defendants, so their suits shouldn't be preempted or displaced. That argument is factually and legally specious. Now, as to the factual record, the city's complaint and amended complaint was far more forthright about the scope and the effect of their claims here. At Excerpt of Record 297, the city's pled, the people do not seek to impose liability on defendants for their direct emissions of greenhouse gases. That prior disclaimer, limited merely to the directness of their claims on the impact of emissions, is key, because just because the cities are not seeking dollars of remediation that are directly linked to particular pounds of greenhouse gas emissions that might have been emitted from particular sources over time, doesn't mean that this suit, and others putatively like it, does not and will not have the effect of regulating greenhouse gas emissions. It will, it does, and candidly, that's obviously what they're trying to do here. One only needs to look at the Supreme Court's decision in International Paper v. Ouellette, and the reasoning there to understand and appreciate that. This is a distinction without a difference. In that case, the Supreme Court recognized in its reasoning if the Vermont court ruled that respondents were entitled to the full amount of damages and injunctive relief sought in the complaint, at a minimum, defendants would have to change its methods of doing business and controlling pollution to avoid threat of ongoing liability. You're running out of time, so please wrap up. The inevitable result of such suits would be that Vermont and other states could do indirectly what they cannot do directly. That's why the court went on to hold that those common law nuisance suits were preempted. They were indirectly going to regulate conduct in the out-of-state for New York. These suits would have the same effect, notwithstanding their attempt to disregard that. Okay. You have some time for rebuttal. Thank you. Two quick threshold points, and then I'd like to address the grable issues and the comments just made by the United States. The threshold points, first, with respect to personal jurisdiction. Whether this court should decide it or remand it, there are three reasons why it should be remanded. First, it's appropriate to let the state know when the state court decides. The state court is in a perfectly good position to do that. Second, as Your Honor pointed out, there is a pending Supreme Court case. Third, the judge also did apply the wrong standard, a standard that is contrary to the en banc decision in Yahoo. As pointed out in our briefs at ER 8 and also 7 and 9, he was focusing on the extent to which the in-state conduct caused the harm. The allegations of the complaint, which is what this court has to focus on because they were not controverted by the defendants. And I'll refer to the specific paragraphs of the complaint because our entire argument here today depends on exactly what we did and did not argue and exactly what the California representative public nuisance law does and doesn't provide. First, the paragraphs that show the defendants managed the operations of their in-house subsidiaries in California subsidiaries. That's 17 to 18, 22 to 30. And then that management included the control over the marketing and promotional activities of those subsidiaries, which is in paragraphs 103 to 23 and it caused the localized harm. That's the but-for causation. That's paragraphs 141, 145 to 47. So if this court were to decide it, the required allegations are there, but I think it's more appropriate not to decide it but to let the state court decide. Second threshold point, waiver. What counsel said is that new plaintiffs were added. And that's true. If you compare the first cause of action, that's one paragraph, 138 to 142, and the second, the first one is the new and the old existing state public nuisance claim, that's 144 to 46 and 148, the changes are we changed the references to the people to references to the plaintiffs. And the reason is because under California law, a representative public nuisance claim for equitable abatement can be brought by a city attorney on behalf of the people of the state of California. Under CCP 731, there is no comparable provision in federal law. So to replete the identical allegations, and those two sets of allegations are identical, except we changed the word people to plaintiffs. The only difference is we had to include the city of Oakland and the city and county of San Francisco because those are the only appropriate plaintiffs to plead the exact claim we involuntarily added. And while counsel has repeatedly said they had the opportunity to take a 1292B appeal, well, the Supreme Court in Caterpillar and this court in Singh expressly said that that doesn't matter. You get to give no weight to that in concluding whether there's waiver or not. So we reserved the rights, we had no obligation to appeal. We could have accepted a dismissal of the case and then we would have been in the same place, but instead we tried to pursue the claims the way they were characterized. You mentioned Caterpillar, so I want to address the issues of the factors of efficiency, finality, convenience. Obviously there's a Fifth Circuit case that you cite that typically says it has to be after trial or summary judgment. On the other hand here in this case, probably this motion to dismiss was probably quite extensive and expensive. I don't want to guess what the legal fees are here just today looking at the people here. Is that something that we should consider, that it was a very complex and expensive motion to dismiss? No. This will be an expensive case in state court, but there's been no factual development. There's been no discovery. There's been no prejudice as a result. The issues that were adjudicated here will be adjudicated again in state court, most under state law principles, some under federal law principles as well. The preemption defenses will be adjudicated in state law. No, that shouldn't make any difference. There is no significant prejudice when you get rid of a case in the first instance, particularly, and this is what the other out-of-circuit cases, Judge Ludig's case in particular, focused on, when the fact of an error deprives a sovereign entity of the right to pursue a state law claim under state law. Instead what's happened is they've recharacterized it. The judge also recharacterized it as a federal issue, which deprived us of the state rule of decision. Now, with respect to Grable, obviously it's a small, special and small category of cases. It's not... Look at the facts of Grable. Grable, the plaintiff affirmatively pleaded a claim that required the court to determine whether there was proper notice under the IRS rule, and that's what the entire case hinged on, and that was not only a substantial issue, but it was a disputed issue, and it was one that wasn't going to affect the balance between the federal and state courts because it was an exclusively federal issue. I need to focus on the allegations of this complaint, which are set forth in the briefs as well as the complaint paragraphs themselves, and I commend them to your honors. Thank you very much. We thank both sides for their argument in the case of City of Oakland, City and County of San Francisco v. BP. An exon is now submitted and we're adjourned for this session. All rise. This court for this session stands adjourned.
judges: Ikuta, Christen, Lee